■ Nautilus Insurance Company, Appellant, v Matthew David Events, Ltd., Defendant, and Timothy Shea, Respondent. [893 NYS2d 529]—

In the underlying action, Timothy Shea, defendant herein, seeks monetary damages for alleged personal injuries sustained while working at a corporate party held on Randall's Island and sponsored by Bloomberg, LLC and Bloomberg, Inc. (Bloomberg). Bloomberg had entered into an agreement with defendant Matthew David Events (MDE) for MDE to plan, design and manage the event for Bloomberg.

MDE also entered into an agreement with United Stage Associates, Inc. (Stage) to perform work, labor and services for the Bloomberg event at Randall's Island. Shea, then an employee of Stage, worked as a stagehand at the event. He alleges that he was injured as a result of an on-the-job accident when he fell off a utility vehicle in which he had been riding.

On the date of the accident, June 27, 2004, MDE was insured by plaintiff Nautilus Insurance Company under a commercial liability policy. Almost three years after the accident, on June 25, 2007, Shea commenced a personal injury action against Bloomberg and MDE, among others. The next day, on June 26, 2007, MDE sent notice about the accident to Nautilus. Immediately, Nautilus disclaimed coverage on the grounds that MDE failed to provide timely notice of the claim and that Shea's injury was excluded under the terms of the policy.

Upon denying coverage, Nautilus commenced this action against MDE, among others, seeking a declaration that no coverage was owed to MDE for the claims asserted in the *Shea* action. The first and second causes of action of the complaint allege that pursuant to the terms of the policy, Nautilus was not required to defend or indemnify MDE because of its failure to provide timely notice of the occurrence or suit. The third cause of action alleges that the policy did not apply to liability as a result of bodily injury to an employee of the insured arising out of and in the course of employment or performing duties related to the conduct of MDE's business. Specifically, the complaint alleges that at the time of the accident, Shea was working for Stage, a company performing duties relating to MDE's work. Because Shea was performing duties related to MDE's work at the time of the accident, and was thus an "employee" of MDE, as the word was defined by the policy, the policy did not provide defense or indemnity coverage to MDE in the underlying action

and Nautilus was entitled to a declaration that no coverage was owed to MDE for any claims asserted by Shea.

On May 16, 2008, Nautilus moved for summary judgment and for a declaration that it was under no obligation to defend or indemnify MDE and/or Shea in the underlying action, and to dismiss all counterclaims against it. In opposition, MDE averred, inter alia, that the language of the employee exclusion was ambiguous since it was not clear whether or not employees of a contractor were included. MDE also argued that the motion was premature since discovery had not yet commenced and it was necessary to determine the relationship between MDE and Stage. Nautilus replied that the language of the employee exclusion was clear, and since Shea was an "employee" of MDE at the time of the accident, recovery under the policy was precluded.

The motion court denied Nautilus's motion for summary judgment holding that the employee exclusion was inapplicable. The court then, upon a search of the record, dismissed the third cause of action of the complaint. The court stated that exclusions from coverage in an insurance policy must be specific and clear in order to be enforced, and ambiguities were construed against the insurer. In this case, the court found that it was not clear whether Shea, as Stage's employee, would be a person "contracted for" by MDE and excluded from coverage. Inasmuch as the policy did not define the phrase "contracted for," the court concluded that it was susceptible to more than one meaning. The court noted that, for instance, the phrase could be narrowly defined to include only a temporary worker whom MDE contracted from a temporary employment agency. We reverse.

" '[C]ourts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies' " (*Sanabria v American Home Assur. Co.*, 68 NY2d 866, 868 [1986], quoting *State of New York v Home Indem. Co.*, 66 NY2d 669, 671 [1985]), whose unambiguous provisions must be given "their plain and ordinary meaning" (*United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [1986] [internal quotation marks and citations omitted]; *see Maroney v New York Cent. Mut. Fire Ins. Co.*, 5 NY3d 467, 471-473 [2005]; *Catucci v Greenwich Ins. Co.*, 37 AD3d 513, 514 [2007]). "An exclusion from coverage 'must be specific and clear in order to be enforced' (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984]), and an ambiguity in an exclusionary clause must be construed most strongly against the insurer" (*Guachichulca v Laszlo N. Tauber & Assoc., LLC*, 37 AD3d 760, 761 [2007]; *see Ace Wire & Cable Co. v Aetna Cas.*

& Sur. Co., 60 NY2d 390, 398 [1983]; *Ruge v Utica First Ins. Co.*, 32 AD3d 424, 426 [2006], *lv denied* 7 NY3d 716 [2006]). However, the plain meaning of the policy's language may not be disregarded to find an ambiguity where none exists (*see Bassuk Bros. v Utica First Ins. Co.*, 1 AD3d 470, 471 [2003], *lv dismissed* 3 NY3d 696 [2004]; *Garson Mgt. Co. v Travelers Indem. Co. of Ill.*, 300 AD2d 538, 539 [2002], *lv denied* 100 NY2d 503 [2003]).

In this case, Nautilus met its burden of demonstrating that the exclusion provision relied upon by the court to dismiss the third cause of action clearly applies to the underlying action. The policy contained an "Employee Exclusion," which excluded from coverage bodily injury to an "employee" of the insured "arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business." The employee exclusion is very broad. The exclusion defined "employee" as including, but not limited to, any person or persons "hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured." Moreover, the exclusion was applicable whether the insured was liable as an employer or in any other capacity and applied to any obligation to share damages with or repay someone else who must pay damages because of the injury.

We agree with Nautilus that giving the words "contracted for" their plain and ordinary meaning, MDE's retention of a subcontractor to perform work for the Bloomberg event at Randall's Island constituted services for the insured and thus falls within the scope of the employee injury exclusion. Indeed, the "contracted for" language of the employee exclusion clearly contemplates that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to that contractor or its employee would fall within the scope of the exclusion (*see U.S. Underwriters Ins. Co. v Beckford*, 1998 WL 23754, 1998 US Dist LEXIS 574 [ED NY 1998]). The argument that this language may be interpreted to apply only to persons who contract directly to work for MDE renders the explanatory language that the term "employees" includes those providing "services to the insured, whether or not paid by the insured" a nullity. It is a well settled principle of contract law that a court should not adopt a construction of a contract "which will operate to leave a provision of a contract . . . without force and effect. An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation" (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 196 [1995] [internal quotation marks and citations omitted]; *see also*

*Consolidated Edison Co. of N.Y. v United Coastal Ins. Co.*, 216 AD2d 137 [1995], *lv denied* 87 NY2d 808 [1996]). Concur—Saxe, Moskowitz and Renwick, JJ.

Mazzarelli, J.P., and Richter, J., dissent in part in a memorandum by Mazzarelli, J.P., as follows: Plaintiff issued a commercial general liability insurance policy to defendant Matthew David Events (the insured), a planner for events held on Randall's Island. Defendant Shea, an employee of a subcontractor hired by the insured, was allegedly injured while working as a stagehand at an event hosted by Bloomberg, LLC and Bloomberg, Inc. Shea then commenced a personal injury action against the insured and others. The insured demanded that plaintiff provide it with a defense and, if necessary, indemnification.

Plaintiff commenced this action seeking a declaration that the incident was not covered by the policy. Plaintiff's position was premised on an endorsement to the policy entitled "Employee Exclusion." The endorsement expressly excluded from coverage claims for bodily injury to "[a]n 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." The term "employee" was expressly defined to "include . . . any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured." The phrase "contracted for" was not further defined.

It is well settled that " '[t]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case' " (*Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 340 [2000], quoting *Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 [1993]). Moreover, "[i]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer" (*Westview Assoc.*, 95 NY2d at 340).

The exclusion invoked by plaintiff is ambiguous because it is eminently reasonable to interpret the definition in the endorsement of the term "employee" as extending only to those who are engaged directly by the insured. Such an interpretation is based on the policy definition which describes "employee[s]" as persons having been "hired *by*," "loaned *to*," "leased *to*," and "volunteering services *to*" the insured. The emphasized prepositions strongly suggest the necessity for privity between the insured and the person being employed by it if a claim is to be excluded.

Plaintiff does not argue that Shea was "hired by," "loaned to," "leased to," or "volunteering services to" the insured. Rather, it argues that Shea fits the one other class of "employee" delineated in the definition, one "contracted for" the insured. Plaintiff contends that this element of the definition expands the universe of "employee[s]" covered by the endorsement to any person who does work that benefits the insured. However, in deciding whether an agreement is ambiguous, " '[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby' " (*Kass v Kass*, 91 NY2d 554, 566 [1998], quoting *Atwater & Co. v Panama R.R. Co.*, 246 NY 519, 524 [1927]). Again, the overall context of the definition of "employee" suggests that the parties intended that only those engaged directly by the insured would be covered by the exclusion. Indeed, this is consistent with the notion that at least one of the purposes of hiring a subcontractor is to insulate oneself from liability. The interpretation urged by plaintiff would defeat this purpose by depriving the insured of coverage for injuries to employees of subcontractors.

In addition, the phrase "a person . . . contracted for . . . the insured" is ambiguous on its face. Indeed, a reasonable person, if he or she could make any sense of the phrase at all, would be confused as to who had contracted with whom. Even if some sensible meaning.could be ascribed to the phrase, reasonable people could differ about what it means. One person could, like plaintiff, interpret it as referring to a person who, like Shea, works for a company with which the insured enters into a contract. However, another person could, as Supreme Court did, interpret the phrase as referring to a person furnished directly to the insured pursuant to a contract entered into between the insured and a third party, such as a temporary employment agency. Because the term is reasonably susceptible of more than one interpretation, it is ambiguous (*see Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]).

The majority states that to accept the insured's interpretation of the endorsement would render a nullity the provision that a person can be considered an "employee" "whether or not paid by the insured." However, that is not necessarily so. It is not unreasonable to believe that such a modifier was added simply to confirm that a person directly engaged by the insured can be an "employee" whether or not he or she is compensated. It does not necessarily apply, as the majority interprets it, to situations where an "employee" is paid by a third party.

Because the definition of "employee" contained in the endorsement is inherently ambiguous, Supreme Court properly denied summary judgment to plaintiff. However, plaintiff's interpretation is not so unreasonable that a declaration is warranted that the insured is entitled to coverage (*see Sekulow v Nationwide Mut. Ins. Co.*, 193 AD2d 395 [1993]). Because an issue of fact exists, Supreme Court overreached in searching the record and dismissing the third cause of action. Instead, I would reinstate plaintiff's third cause of action so that a trier of fact can determine whether the endorsement at issue here bars the insured's claim. **[Prior Case History: 2008 NY Slip Op 33526(U).]**